DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant John C. Andrefsky, M.D., has appealed from a summary judgment decision in the Summit County Court of Common Pleas, rendered in favor of Defendant-Appellee Howard D. Shapiro, M.D., on a breach of contract claim. This Court affirms in part and reverses in part.
 I {¶ 2} In December 2000, Appellant entered into a written employment agreement ("Agreement") with Appellee, to work as a physician with Appellee's sole-proprietorship, Summit Neurological Associates. Under the Agreement's "Compensation" provision, Appellant's first-year salary was set at $175,000 and his second-year salary was to be calculated based on a prescribed formula:
"8. Compensation. Shapiro [Appellee] will compensate Employee [Appellant] as follows, in accordance with Shapiro's customary payroll policies:
"(a) First year of employment. Base annual salary of $175,000.
"(b) Second year of employment. Base annual salary of $175,000, plus 50% of the difference between $175,000 and one-half of Shapiro's Net Profits before payment of physician compensation for the immediately preceding four calendar quarters.
"(1) Example: If Shapiro's net profit (before payment of physician compensation) for the immediately preceding four calendar quarters was $400,000 and if Employee's first year salary was $100,000, Employee's base annual salary will be $150,000, determined as follows:
 "Prior year's salary $100,000 "Prior year's net profit $400,000 "One-half of net profit $200,000 "Net profit/salary difference $200,000 -100,000 = 100,000 "50% of difference $ 50,000 ________ "Total $150,000
"* * *
"(d) Shapiro's Net Profit. "Shapiro's Net Profit" equals Shapiro's profit after all expenses of the practice, except all physician compensation, including, without limitation, administrative wages, CME expenses, insurance premiums, travel and entertainment, dues, journals, retirement plan contributions and expenses, automobile expenses, payroll taxes and other items of expense or fringe benefit. In the event of any dispute, Net Profit will be conclusively determined by Shapiro's regularly employed independent accountants." (Edits omitted.)
The litigation that underlies this appeal arose from a dispute over the formula and the resulting second-year salary calculation.
 {¶ 3} Appellant began employment in fall 2001. During the summer of 2002 Appellee's accountants calculated Appellant's second-year salary, but Appellant protested that the calculation was incorrect. The disagreement centered on the phrase "physician compensation" in the formula, as interpreted and applied by the various accountants. Appellee's regular accountants were of the firm Spector Selino, first represented by Ms. Martha Bethea but later by Mr. Lester Sherman. Appellant's accountant was his wife, a certified public accountant.
 {¶ 4} Initially, on behalf of Appellee, Ms. Bethea had interpreted "physician compensation" to mean the aggregate salaries of all physicians employed at Summit Neurological Associates. This initial interpretation resulted in a proposed second-year salary for Appellant of $288,315. Because this amount was larger than Appellee had anticipated, he believed it to be incorrect and instructed the accountants to recalculate it according to his understanding.
 {¶ 5} Appellee's position was that "physician compensation" meant only his own individual salary. Based on this understanding, Appellee had Mr. Sherman recalculate the compensation, which resulted in a proposed second-year salary of $190,193. Appellee began paying Appellant this second-year salary, but Appellant protested. Appellant's wife had performed independent calculations, based on Appellant's interpretation of the Agreement. Initially, Appellant had interpreted "physician compensation" to mean Appellant's $175,000 salary, which resulted in a second-year salary of $227,518. However, Appellant's wife subsequently revised their position to interpret "physician compensation" to mean the aggregate salaries and benefits of all physicians employed at Summit Neurological Associates, based on their plain reading of the terms in the Agreement. This interpretation resulted in a proposed second-year salary for Appellant of $337,320.
 {¶ 6} Thus, Appellant believed his second-year salary to be $337,320 (an amount that even exceeded Appellee's salary, which was taken in the form of his proprietorship compensation), while Appellee believed the second-year salary to be only $190,193. Because the parties could not reach an understanding over this $147,127 discrepancy, Appellant invoked the termination provision of the Agreement and resigned, effective January 24, 2003.
 {¶ 7} A collateral aspect of this dispute arises from Appellant's conversations with certain patients on his last day of employment, informing them of his intent to leave. The Agreement contained a provision for notifying patients:
"20. Patients.
"* * *
"(b) Procedure. At Employee's election, Shapiro and Employee will mail to patients under the care of Employee on termination of this agreement a mutually agreeable letter. Employee will pay all additional costs incurred by Shapiro in connection with the notice letter, including postage and any staff overtime. The letter will notify the patient of Employee's intention to relocate his/her practice, the address of Employee's new office, and ask whether they want to remain with Shapiro or transfer to Employee. Only a patient who has been consistently and primarily treated by Employee will receive this letter." (Edits omitted.) Appellee claimed that Appellant violated this provision by verbally informing these patients that he was leaving. Appellant began employment with his new employer on February 1, 2003.
 {¶ 8} On February 20, 2003, Appellant filed a lawsuit against Appellee in the Summit County Court of Common Pleas, alleging breach of contract, promissory estoppel, and unjust enrichment. Specifically, Appellant alleged that Appellee breached the Agreement by failing to pay him according to its terms. Appellee answered and counterclaimed, seeking reformation of the Agreement to reflect the intent of the parties, declaratory judgment on the potential damages time period, and breach of contract by Appellant for verbally informing patients that he was leaving. Appellant answered and the case proceeded to discovery.
 {¶ 9} On September 26, 2003, both parties filed motions for summary judgment, addressing various aspects of the multiple claims. On January 28, 2004, the trial court journalized a single order, jointly granting and denying certain aspects of the two motions.[1] This order decided all claims except Appellee's final counterclaim, which was resolved but for a determination of damages.
 {¶ 10} Appellant's breach of contract claim was the principal issue and was the primary subject of Appellant's motion, in which Appellant sought summary judgment on his claim by stating that the Agreement's terms were unambiguous and Appellee had failed to perform. Appellant urged that the plain meaning of "physician compensation" unequivocally encompassed all the Summit Neurological Associates physicians, and included both their salaries and benefits. Appellee opposed this motion, arguing that a material question of fact existed, because there were at least three reasonable interpretations of who is meant by the word physician in the term "physician compensation": Appellant, Appellee or all the physicians. Appellee also disputed whether compensation included benefits or merely salary. Appellant replied that Appellee's alternative interpretations were unreasonable, and that the remainder of the argument was merely a damages determination that was not at issue on summary judgment.
 {¶ 11} The trial court denied Appellant's motion, but rested its decision on a provision in the Agreement that expressly stated that Appellee's regular accountant would determine the net profit. The trial court explained:
"Parties have presented this Court with a dizzying array of possible calculation scenarios that appear to be an attempt to establish an issue concerning the intent of the parties. However, notwithstanding the many colorful financial presentations, the parties each conveniently overlook that the employment agreement did address just this scenario. The contract does state that `[i]n the event of any dispute, Net Profit will be conclusively determined by [Appellee's] regularly employed independent accountants.' * * * Whether this Court would take issue with the interpretation of the compensation portion of this employment is immaterial to its interpretation. The parties have agreed to leave in the hands of [Appellee's] regularly employed independent accountant the job of resolving compensation disputes. * * * As such there is no contract ambiguity and [Appellee] could not have breached the agreement by failing to compensate [Appellant] per the terms of the agreement.
Under this approach, the trial court also had to make a necessary, associated finding on the identity of Appellee's regularly employed independent accountants: "[Appellant] does not dispute that Spector 
Selino, by and through Lester Sherman was [Appellee's] regularly employed independent accountant and has been so for several decades. The undisputed facts establish that when presented with the issue of calculating [Appellant's] second year salary Mr. Sherman provided the parties with his calculations based upon the plain reading of the employment agreement."
From these findings, the trial court ruled, as a matter of law, that Appellee had performed and had not breached the contract.
 {¶ 12} Appellee had also sought partial summary judgment on Appellant's breach of contract claim in his own motion, by seeking a determination that "physician compensation" meant one person (i.e., "physician" in the singular), and furthermore, that it excluded benefits. Appellant had opposed this motion. By awarding summary judgment to Appellee on this Claim, the trial court implicitly granted this motion, thereby upholding Appellee's interpretation of the Agreement's terms as put into effect by Mr. Sherman.
 {¶ 13} In resolving the remaining issues on summary judgment, the trial court also found that Appellant had breached the contract by verbally notifying certain patients of his impending departure from the company. The trial court considered and denied Appellant's motion, and ruled as a matter of law that Appellant had breached the contract. The court set a status conference to determine damages, but Appellee voluntarily dismissed this claim before occurrence of the conference.
 {¶ 14} In response to the summary judgment order, Appellant promptly filed a motion to reconsider. Appellant argued that the identity of Appellee's accountant was not undisputed, as the trial court had suggested in the order. Specifically, Appellant explained that Appellee's second accountant, Lester Sherman, whose interpretation the trial court had accepted as conclusive, was not actually Appellee's regular accountant, and no longer even worked for Spector Selino. At a minimum, Appellant argued, the identity of the regular accountant was a contested issue of material fact. Appellee opposed this motion by arguing that the term "accountants" in the plural demonstrates that more than one accountant satisfies the meaning of regularly employed independent accountants, and that the second accountant was one such regular accountant. Although it is not recorded, both parties concede that the trial court orally denied the motion to reconsider.
 {¶ 15} On March 12, 2004, Appellee voluntarily dismissed his breach of contract counterclaim, by way of Civ.R. 41(A)(2) and (C). As this was the sole outstanding claim, pending resolution on the issue of damages, the dismissal effectively concluded the case and rendered the prior summary judgment order final and appealable. Thus, Appellant has timely appealed, asserting three assignments of error.
 II Assignment of Error Number One
"The trial court erred in granting summary Judgment to [appellee] on [appellant's] complaint."
 {¶ 16} Appellant has argued that the trial court erred in granting summary judgment to Appellee, because material issues of fact remain. Such issues include the identity of Appellee's regularly employed independent accountant, the role of that accountant under the terms of the contract in resolving certain issues, whether terms in that contract are open to reasonable dispute, and if so, the meaning of those terms. Appellant has urged that these are questions to be resolved by a trier of fact, and therefore, summary judgment was inappropriate. We agree.
 {¶ 17} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2. Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 18} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id. Once the moving party's burden has been satisfied, the burden shifts to the non-moving party, as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
 {¶ 19} To obtain summary judgment for breach of contract, the party seeking judgment must prove an absence of any genuine issue of material fact for each of the elements: the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. See Preferred Capital, Inc., v. Sturgil, 9th Dist. No. 21787, 2004-Ohio-4453, at ¶ 11. In the present case, the parties do not dispute the existence of the Agreement, they dispute the meaning of certain terms and the effect of that meaning in the court's ruling on performance or breach. This requires an inquiry into the meaning of the Agreement's terms, with recognition that "the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, at paragraph one of the syllabus.
 {¶ 20} In ruling on Appellant's motion, the trial court relied on a provision in the Agreement that expressly stated that Appellee's regular accountant would determine the net profit. The trial court then found that Spector Selino, by and through Lester Sherman, was Appellee's regularly employed independent accountant. Sherman had provided an interpretation of physician compensation and net profit, and from this, had calculated Appellant's second-year salary, which Appellee had paid. From this, the trial court concluded that Appellee had performed, and as a matter of law, had not breached the contract, and therefore awarded summary judgment to Appellee.
 {¶ 21} Appellant has argued that the identity of Appellee's "regularly employed independent accountant" was open to reasonable dispute, and therefore, was an improper finding on summary judgment. We recognize:
"If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." (Internal citations omitted.) Refuse Transfer Co. v.Browning-Ferris (1984), 15 Ohio St.3d 321, 322 (finding summary judgment inappropriate where reasonable minds could differ on the meaning of a term); see, also, Davis v. Loopco Industries, Inc. (1993),66 Ohio St.3d 64, 66.
In the present case, the specific provision of the Agreement stated:
"In the event of any dispute, Net Profit will be conclusively determined by Shapiro's regularly employed independent accountants." (Edits omitted.)
 {¶ 22} While recognizing that Spector Selino is Appellee's regularly employed independent accounting firm, Appellant has argued that the actual accountant is Martha Bethea, who provided the original calculation. Furthermore, the alleged representative, Lester Sherman, was no longer even employed at Spector Selino, but at the time of the calculation was actually a Vice President at Akron Children's Hospital. In response, Appellee contends that Lester Sherman has been Appellee's long time business advisor and accountant, and continues to perform independent accounting work, which is billed through Spector Selino.
 {¶ 23} The trial court found it clear and unambiguous that Lester Sherman was the regular accountant, but this Court is not persuaded. There is a distinct absence in the record of any discussion of this issue prior to the trial court's order, and a clear dispute over this issue since the order, raised in both the motion to reconsider and the appeal to this Court. This appears to be the type of question that is not evident from the four corners of the contract, and therefore, an inappropriate issue for summary judgment. See Refuse Transfer,15 Ohio St.3d at 322; Davis, 66 Ohio St.3d at 66.
 {¶ 24} Appellant has also urged that the trial court erred in ascribing to those accountants the role of interpreting contract terms, arguing that while the words of the provision are clear, the meaning is not when taken as a whole. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v. Buckeye Pipe LineCo. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. Appellee would have us follow the trial court's interpretation that:
"Whether this Court would take issue with the interpretation of the compensation portion of this employment is immaterial to its interpretation. The parties have agreed to leave in the hands of [Appellee's] regularly employed independent accountant the job of resolving compensation disputes." (Emphasis added.)
However, we cannot agree. Our ordinary reading of the provision leads us to conclude that "Shapiro's regularly employed independent accountants" are entrusted with conclusively deciding disputes over the numerical, mathematical calculations of net profit, based on Appellee's financial books. This finality on financial issues does not reasonably extend to interpretation of the term "physician compensation" in the language of the contract. Otherwise stated, the dollar value of "physician compensation" is one thing, but the meaning of "physician compensation" is a different matter, which is not reasonably allocated to the conclusive determination of an accountant without more explicit language. We must conclude that extending such autocracy to a vaguely identified accounting firm creates a manifestly absurd result that is not supported by the overall content of the Agreement. See Alexander,
53 Ohio St.2d at paragraph two of the syllabus.
 {¶ 25} We are further persuaded by considering the entire compensation provision, as well as the entire Agreement. As the Supreme Court has explained:
"In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." Enviresponse v. Cty. Convention (1997), 78 Ohio St.3d 353, 362, quoting Farmers Natl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, paragraph six of the syllabus.
In the present case, the trial court read the final sentence of provision 8(d) to grant Appellee's accountants autocracy over the interpretation of net profit, and accordingly, the associated terms that comprise net profit. With such authority, an accountant would essentially have latitude to craft any second-year salary which that accountant deemed appropriate, through a selective interpretation of these provisions. This possibility is evidenced by the multiple, and wide-ranging, results obtained from the various calculations leading into the dispute in this case. This reading effectively renders meaningless the remainder of provision 8, which contradicts the above rule. SeeEnviresponse, 78 Ohio St.3d at 362.
 {¶ 26} Thus, we conclude that the trial court's grant of summary judgment on this basis was improvident and cannot be upheld. See RefuseTransfer, 15 Ohio St.3d at 324; Davis, 66 Ohio St.3d at 66. However, on review of a summary judgment motion, this Court proceeds de novo, stepping into the role of the trial court. See Grafton,77 Ohio St.3d at 105. Therefore, we are left to determine whether the terms in the Agreement are open to reasonable dispute, and if not, then whether we can establish the meaning of those terms as a matter of law.
 {¶ 27} As stated above, if the terms of the contract are unambiguous, then interpretation is a matter of law with no issue of fact to be determined; but if a term is unclear from contract language, then factual determination may be necessary. Refuse Transfer, 15 Ohio St.3d at 322. "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties. The general rule is that contracts should be construed so as to give effect to the intention of the parties." Aultman Hosp. Assoc. v. Community Mut. Ins. (1989),46 Ohio St.3d 51, 53. In the present case, the parties express differing intents as to the meaning of "physician compensation."
 {¶ 28} Appellant's position is that the meaning of the language is clear and unequivocal as written; that the term "physician compensation" as used in an ordinary and general sense in provision 8, particularly in provision 8(d), means all physicians working at Summit Neurological Associates, unrestricted by any other implied limitations. From this prescribed formula, the example calculation provided in the Agreement, and Appellant's awareness of company profits before and after physician compensation, he could anticipate a significant increase in compensation during his second year. This expectation would be consistent with the example in the Agreement, in which an employee under similar circumstances received a 50% increase in pay.[2] Appellant urges that this was the intent he understood at the time of signing, and this is the intent that makes the most sense in the scheme of the Agreement's overall language.
 {¶ 29} Appellee's position is that "physician compensation" means only his own personal, individual salary. Appellee supports this position by insisting that "physician compensation" is written in the singular, and that there was a specific purpose behind its inclusion. According to Appellee, the provision had been included in the Agreement to protect Appellant's interest under the formula, which was dependant on Appellee's prior-year net profits. Because Appellee was the sole proprietor, he could award himself any salary he chose. Thus, the possibility existed that this salary could be an excessively large amount, even an amount equal to Summit Neurological Associates' entire profit, thereby reducing the net profits to zero, which would preclude any salary increase for Appellant. Therefore, the Agreement's salary calculation provision used the term "Shapiro's Net Profit," in which Appellee's salary would be added back to the Summit Neurological Associates' net profit for purposes of calculating Appellant's second-year salary.
 {¶ 30} By adding back Appellee's salary, this provision would prevent Appellee from restricting Appellant's salary increase through an excessive distribution to himself. However, in actuality, Appellee had not awarded himself any salary during the prior year, so the amount to be added back was zero. Based on this understanding, Lester Sherman did the calculation, which resulted in a proposed second-year salary of $190,193. This was within the salary range that Appellee had envisioned at the time of signing the contract.
 {¶ 31} Therefore, while Appellant urges that the intent to include all physicians is plain from the face of the contract, Appellee contends his primary intent was that it would include only his own salary, and that his intent must be considered. See Aultman Hosp., 46 Ohio St.3d at 53. In addition, Appellee contends that, at a minimum, if his asserted meaning is not deemed unambiguous and determinative, then it is a material question of fact to be decided by a finder of fact. See Refuse Transfer,15 Ohio St.3d at 322. Looking at the record before us, the language of the Agreement and the arguments presented, we conclude that the question of who was the physician in "physician compensation" is a material issue of fact, which cannot be resolved on summary judgment. See Id. at 322;Davis, 66 Ohio St.3d at 66.
 {¶ 32} Finally, Appellant has argued that the express language of the contract includes both physicians' salary and physicians' benefits within the meaning of "physician compensation." As emphasized repeatedly above, when the terms of the contract are unambiguous, interpretation is a matter of law with no issue of fact to be determined. Refuse Transfer,15 Ohio St.3d at 322. Provision 8(d) states the meaning as:
"`Shapiro's Net Profit' equals Shapiro's profit after all expenses of the practice, except all physician compensation, including, without limitation, administrative wages, CME expenses, insurance premiums, travel and entertainment, dues, journals, retirement plan contributions and expenses, automobile expenses, payroll taxes and other items of expense or fringe benefit."
 {¶ 33} Appellant reads this provision as: Shapiro's profit after allexpenses of the practice, except physician compensation; in whichphysician compensation includes. . . . We are persuaded that this is the clear and correct meaning, arising from a plain and ordinary reading of the provision, based on the nature of the items subsequently listed. Each of the listed items (e.g., wages, CME, insurance, travel, dues, etc.) more appropriately represents a benefit attributable to a particular physician, rather than a general expense of the practice.
 {¶ 34} Appellee reads this provision as: Shapiro's profit after allexpenses of the practice (except physician compensation); in which thoseexpenses include. . . . As stated above, we find this to be a strained interpretation. Appellee relies on his underlying intent, and that he would not intentionally subject himself to such an unfair formula for calculating Appellant's compensation. However, we note that an agreement "does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties." Aultman Hosp.,46 Ohio St.3d at 55; see, also, Enviresponse, 78 Ohio St.3d at 362. Thus, we reasonably conclude that, under a plain reading of the Agreement, the term "physician compensation" includes these benefits as well as the physician's salary.
 {¶ 35} Upon final analysis, we find that the trial court erred, as a matter of law, in deeming Appellee's independent accountant responsible for interpreting the contract provision, which warrants invalidation of the trial court order on that basis. Furthermore, we find that certain meaning may be ascribed to certain terms as a matter of law; that "physician compensation" does include physician benefits. However, the meaning of who is the physician in "physician compensation" is subject to reasonable dispute, and therefore, inappropriate for resolution on summary judgment. Accordingly, this Court finds that Appellant's first assignment of error has merit.
 Assignment of Error Number Two
"The trial court erred in sua sponte [sic] Granting Summary judgment to [Appellee] on [Appellee's] counterclaim for breach of contract."
 {¶ 36} Appellant has argued that the trial court erred in granting partial summary judgment to Appellee on his counterclaim, in which he claimed that Appellant breached the contract by his unauthorized verbal contact with certain patients. However, this issue is not properly before this Court on appeal.
 {¶ 37} When a party dismisses an action pursuant to Civ.R. 41(A), it is as if no action had ever been brought. Jackson v. Allstate Ins. Co.,
2nd Dist. No. 20443, 2004-Ohio-5775, at ¶ 24, citing Denham v. City ofNew Carlisle (1999), 86 Ohio St.3d 594, 596. In the present case, Appellee voluntarily dismissed this particular claim under Civ.R. 41(A)(2) and (C), subsequent to the trial court's grant of partial summary judgment, but before the trial court had resolved the issue of damages. Because the current status is as if the claim had never existed, Appellant's claim of error on this issue is unavailable. Accordingly, we decline to address this second assignment of error.
 Assignment of Error Number Three
"The trial court erred in denying [Appellant's] motion for partial summary judgment."
 {¶ 38} Appellant has argued that the trial court erred in denying his motion for summary judgment on his breach of contract claim. Appellant reasoned that the plain language of the contract is unambiguous, and therefore, no material issues of fact remain. Furthermore, Appellant has argued that the trial court erred by failing to grant summary judgment which would preclude Appellee's proffered mistake of fact defense. We disagree.
 {¶ 39} Because this argument implicates the same circumstances, allegations and unresolved questions identified in the above assignment of error number one, we must conclude that material issues of fact remain. Therefore, summary judgment is not appropriate. See Temple,50 Ohio St.2d at 327. Appellant's third assignment of error is without merit.
 III {¶ 40} Appellant's first assignment of error is sustained. We decline to address the second assignment of error. The third assignment of error is denied. The judgment of the trial court is affirmed in part, reversed in part, and cause remanded for further consideration consistent with this opinion.
Judgment affirmed in part reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Batchelder, J. Concurs.
[1] Appellant's complaint contained three claims: breach of contract (Claim #1), promissory estoppel (Claim #2), and unjust enrichment (Claim #3). Appellee's counterclaim also contained three, independent claims: reformation of the Agreement to reflect the intent of the parties (Counterclaim #1), declaratory judgment on the potential damages time period (Counterclaim #2), and breach of contract by Appellant for verbally informing patients that he was relocating (Counterclaim #3).
Both parties filed motions for summary judgment, each of which was opposed by the other party, and thereafter replied to by the filing party, creating multiple filings and numerous issues for resolution. On January 28, 2004, the trial court journalized a single order, jointly granting and denying specific aspects of the two motions. On the whole, this order decided all claims except Appellee's Counterclaim #3, which was resolved but for a determination of damages. The outcome of each claim was decided separately.
Claim #1, breach of contract, was the first subject of Appellant's summary judgment motion, in which Appellant stated that the Agreement's terms were unambiguous and Appellee had failed to perform. This was the principal issue for resolution, as discussed fully in the text. The trial court ruled, as a matter of law, that Appellee had not breached the contract. Appellee had also sought partial summary judgment on Claim #1, as the third and fourth subjects of his summary judgment motion. By awarding summary judgment to Appellee on this Claim, the trial court implicitly granted this motion.
Claim #2, promissory estoppel, was the fifth and final subject of Appellee's summary judgment motion, in which Appellee stated that promissory estoppel was unavailable in a case such as this, in which an actual contract existed. Appellant opposed this motion, arguing that promissory estoppel was raised as an alternative, to be considered if the court should rescind the contract. Appellee replied by reiterating his original arguments. The trial court agreed with Appellee's position, finding the promissory estoppel claim inapplicable in the present case. Although not explicitly stated, we reason that Appellant's unjust enrichment claim (Claim #3) is similarly unavailable, and implicitly denied, as a matter of law.
Counterclaim #1, reformation, was the second subject of Appellant's motion, in which Appellant stated that the Agreement's terms were unambiguous, that any mistake by Appellee was unilateral, and therefore, that reformation was inapplicable as a matter of law. Appellee opposed by stating that the asserted mistake was reasonable and could be proven so at trial. Appellant reiterated that Appellee's mistake defense failed as a matter of law. The trial court impliedly granted Appellant's motion by finding that the terms were unambiguous and then denying reformation.
Counterclaim #2, declaratory judgment, was the first subject of Appellee's summary judgment motion, in which Appellee sought a judicial determination that the time period implicated by the breach of contract claim was from October 1, 2002 until January 25, 2003. Appellant opposed this motion by arguing that the time period began on August 13, 2002, Appellant's actual start date, and continued until April 25, 2003, the end of Appellant's 90-day termination notice period. First, the trial court recognized that these dates were only pertinent to calculating damages in the event of a breach by Appellee. Then, the court deemed this issue moot based on its finding that Appellee had not breached the agreement and would owe no damages. As the second subject of his summary judgment motion, Appellee had also sought a ruling that Appellant was not entitled to benefits from the company pension plan. The trial court concluded that because Appellant had not yet applied for any benefits from the pension plan, the question was not properly before the court.
Counterclaim #3, breach of contract, was the third and final subject of Appellant's summary judgment motion, in which Appellant stated that the Agreement's terms ("At Employee's election") made the means of notification discretionary, and that Appellee could not prove any harm. Appellee opposed this motion, arguing that a material question of fact existed on either the meaning of the provision or the occurrence of harm. Appellant responded that the contract interpretation was a question of law. The trial court agreed that it was a question of law, but denied Appellant's motion. Specifically, the trial court applied the rule of contract construction that the express inclusion of one thing implies the corresponding exclusion of all others, to conclude that the provision for a mutually agreeable letter excluded the allowance of verbal notification. Thus, the trial court ruled, as a matter of law, that Appellant had breached the contract and set a status conference to determine damages. However, Appellee subsequently dismissed this claim voluntarily, pursuant to Civ.R. 41(A)(2) and (C).
[2] In the Example set forth in provision 8(b)(1) of the Agreement:
"(1) Example: If Shapiro's net profit (before payment of physician compensation) for the immediately preceding four calendar quarters was $400,000 and if Employee's first year salary was $100,000, Employee's base annual salary will be $150,000, determined as follows:
 "Prior year's salary $100,000 "Prior year's net profit $400,000 "One-half of net profit $200,000 "Net profit/salary difference $200,000 -100,000=100,000 "50% of difference $ 50,000 ________ "Total $150,000
This represents a 50% increase in salary: $100,000 increasing to $150,000.
In Appellant's real life calculation:
 Prior year's salary $175,000 Prior year's net profit $999,278* One-half of net profit $499,639 Net profit/salary difference $324,639 -499,639=175,000 50% of difference $162,320 ________ Total $337,320
*999,278 = $410,772 reported profit plus $588,506 in "physician compensation." This represents a 40% increase in salary: $175,000 increasing to $337,320.