DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Buckeye Corrugated, Inc. ("BCI"), T.B. Bennett and other directors of BCI ("the Directors"), and Roy Allen and his company, G A Investments (collectively "Allen"), separately appeal from a judgment of the Summit County Court of Common Pleas that found there had not been an enforceable settlement of this litigation and, therefore, vacated its prior dismissal of the case. This Court reverses and remands.
 I. *Page 2 {¶ 2} Although the parties recount different versions of the underlying facts of this case, the facts relevant to this appeal are undisputed. Allen, a former officer, employee, and director of BCI filed suit against BCI's directors after his relationship with the company was terminated. Through a separate action, BCI filed suit against Allen, alleging claims pertaining to the termination of Allen's relationship with BCI. The trial court consolidated the two cases and Allen later filed counterclaims and amended claims against BCI.
 {¶ 3} After over a year of litigation, the parties entered into a settlement agreement, the terms of which were set forth in a Term Sheet and a letter from Allen's counsel to counsel for BCI. On May 8, 2006, the parties appeared in court and stated on the record that they had reached a settlement.
 {¶ 4} The settlement agreement provided, in relevant part, that BCI would buy back Allen's shares of BCI stock for $10.2 million and that BCI would pay ten percent of the purchase price immediately and pay Allen the remaining ninety percent of the stock purchase price pursuant to a 10-year promissory note. The parties also agreed that Allen's note would be subordinated to all of BCI's bank debt and that Allen would sign "a subordination agreement in a commercially reasonable form acceptable to BCI's bank lenders."
 {¶ 5} On May 11, 2006, the trial court dismissed the actions due to the parties' representation that they had reached a settlement. The trial court explicitly retained jurisdiction to enforce the settlement agreement. Disputes later *Page 3 
arose, however, over the meaning of the phrase "subordination agreement in a commercially reasonable form," and Allen refused to sign any of BCI's proposed subordination agreements that had been approved by the banks.
 {¶ 6} After unsuccessfully moving to enforce the settlement with a subordination agreement that had been approved by the banks, BCI procured a revised subordination agreement from its bank lenders.[1]
Allen still refused to sign the subordination agreement. BCI again moved the trial court to enforce the settlement agreement and the Directors joined in that motion, urging the court to require Allen to sign the revised subordination agreement.
 {¶ 7} Although Allen countered with his own motion to enforce the settlement agreement, as well as a request for the court to award him interest on the settlement, the trial court did not address those issues.[2]
 {¶ 8} After holding a hearing, the trial court concluded that there had been no meeting of the minds at the time the parties purportedly entered into their settlement. Specifically, the trial court found that the parties had not agreed on a *Page 4 
material term of the settlement: the subordination agreement and its content. Consequently, the trial court vacated its prior dismissal of the case and placed the case back on its active docket.
 {¶ 9} BCI, the Directors, and Allen separately appealed. This Court consolidated the appeals and designated BCI and the Directors as the appellants and Allen as the cross-appellant.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED BY VACATING THE SETTLEMENT AGREEMENT AND FINAL JUDGMENT OF DISMISSAL BASED UPON THE ERRONEOUS CONCLUSION THAT THERE WAS NO MEETING OF THE MINDS."
 {¶ 10} BCI and the Directors contend that the trial court erred by vacating the settlement agreement because it incorrectly concluded that there had been no meeting of the minds when the parties purportedly entered into their settlement. We agree.
 {¶ 11} A settlement agreement is a particularized form of a contract.Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. It is a "contract designed to terminate a claim by preventing or ending litigation, and 
such agreements are valid and enforceable by either party."Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson,Inc. (1995), 74 Ohio St.3d 501, 502.
 {¶ 12} The elements necessary to form a contract "`include an offer, acceptance, contractual capacity, consideration, * * * a manifestation of mutual *Page 5 
assent and legality of object of consideration.'" Kostelnik v.Helper (2002), 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, quotingPerlmuter Printing Co. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409,414. A contract is binding and enforceable if it encompasses the essential terms of the agreement. Mr. Mark Corp. v. Rush, Inc. (1983),11 Ohio App.3d 167, 169.
 {¶ 13} During May 2006, the parties announced in open court that they had reached a settlement, that the settlement agreement had been reduced to writing, and that the terms of their settlement were set forth in a Term Sheet and a May 4, 2006 letter from one of Allen's attorneys to BCI's attorney. There has never been any dispute that the parties' settlement agreement provided, in relevant part, that BCI would purchase Allen's BCI stock for $10.2 million, $9.225 million of which would be payable pursuant to a 10-year cognovit promissory note. The agreement further provided that Allen's cognovit note would be subordinated to all of BCI's existing and future bank debt, and that Allen would sign "a subordination agreement in a commercially reasonable form acceptable to BCI's bank lenders."
 {¶ 14} Because the parties had agreed to all the essential terms of their settlement, there was an enforceable settlement agreement. The parties agreed that they had reached an enforceable settlement and, in fact, all parties had moved the trial court to enforce the settlement agreement. Although it is true that "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract," all essential terms of the settlement had been agreed upon *Page 6 
and committed to writing, and the parties never disputed that fact. SeeKostelnik, supra, at ¶ 16; Episcopal Retirement Homes, Inc. v. OhioDept. of Indus. Relations (1991), 61 Ohio St.3d 366, 369. The disagreement between the parties in this case did not concern the existence of any material term of the settlement, but instead focused on the meaning of one of those terms. A dispute over the meaning of a term does not constitute an absence of a material term that could defeat the enforceability of the contract. The trial court had no basis to vacate the parties' settlement but instead should have resolved the parties' dispute over the meaning of that term.
 {¶ 15} The parties had agreed to all of the material terms of their settlement, including the term that was the primary focus of their dispute: that Allen would execute a subordination agreement, that the bank lenders were required to approve it, and that the subordination agreement must be in a "commercially reasonable form." BCI had proposed a subordination agreement that had been approved by its bank lenders. Therefore, the parties' sole dispute was whether the proposed subordination agreement was in a "commercially reasonable form."
 {¶ 16} "Where the meaning of terms of a settlement agreement is disputed, * * * a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, syllabus. Thus, the trial court held a hearing to take evidence to resolve this dispute. There was only one issue before *Page 7 
the trial court at the hearing: whether the proposed subordination agreement was commercially reasonable.
 {¶ 17} The crux of the parties' post-settlement dispute was the proper context within which to define "commercially reasonable". Allen maintained that the subordination agreement must be reasonable in light of the parties' settlement, while BCI's position was that general lending practices would define what is "commercially reasonable." Ultimately, the parties' disagreement focused on whether a "commercially reasonable" subordination agreement could include terms that conflicted with the terms of the settlement agreement as set forth in the Term Sheet. Specifically at issue, the proposed subordination agreement included a so-called standstill provision that would hinder Allen's ability to collect on the cognovit note in the event of a default by BCI.
 {¶ 18} Even though the trial court tried to keep the parties focused on that issue and repeatedly reminded them that the purpose of the hearing was to determine whether the proposed subordination agreement was commercially reasonable, the trial court ultimately failed to make that determination. During the hearing, Allen and BCI each presented some evidence pertaining to the commercial reasonableness of the proposed subordination agreement. Rather than deciding whether the term was commercially reasonable, the trial court found there was no meeting of the minds as between the parties. The trial court did not resolve the parties' dispute over the meaning of the term, based on the evidence *Page 8 
presented, and "with recognition that `the intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Andrefsky v. Shapiro, 9th Dist. No. 22052,2004-Ohio-7174, at ¶ 19, quoting Kelly v. Medical Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 19} Accordingly, this matter must be remanded to the trial court for a determination of whether the subordination agreement proposed by BCI and its bank lenders is "commercially reasonable" as that term is used in the parties' settlement agreement. The first assignment of error is sustained.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DENYING THE BCI PARTIES' MOTIONS TO ENFORCE THE SETTLEMENT AGREEMENT, WHICH REQUIRED ALLEN TO EXECUTE A SUBORDINATION AGREEMENT THAT WAS `IN A COMMERCIALLY REASONABLE FORM.'" CROSS-ASSIGNMENT OF ERROR I "IN THE EVENT THIS COURT FINDS THERE WAS AN ENFORCEABLE SETTLEMENT, IT SHOULD REVERSE THE TRIAL COURT'S DENIAL OF ALLEN'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT. THE SETTLEMENT SHOULD BE ENFORCED ACCORDING TO THE TERMS SHEET AND THE SUBORDINATION AGREEMENT ATTACHED TO ALLEN'S MOTION TO ENFORCE."
 CROSS-ASSIGNMENT OF ERROR II *Page 9 "IN THE EVENT THAT THIS COURT FINDS THE SETTLEMENT IS ENFORCEABLE, THE TRIAL COURT ERRED BY DENYING ALLEN'S MOTION TO ASSESS INTEREST AND FAILING TO ASSESS INTEREST FROM THE TIME THE SETTLEMENT WAS TO BE EXECUTED."
 {¶ 20} The second assignment of error and the cross-assignments of error will not be addressed because they raise issues that are not before us on appeal. Each party asks this Court to accept its construction of the term "commercially reasonable" as it is used in the parties' settlement agreement. In the second cross-assignment of error, Allen asserts that he is entitled to interest on the settlement.
 {¶ 21} Because the trial court did not reach any of these issues, this Court cannot do so for the first time on appeal. This Court's role on appeal is to review the trial court's decision and determine whether it is supported by the record. Because this Court acts as a reviewing court, it should not consider for the first time on appeal issues that the trial court did not decide. Lang v. Holly Hill Motel, Inc., 4th Dist. No. 05CA6, 2005-Ohio-6766, at ¶ 22, citing Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360. If this Court were to reach issues that had not been addressed by the trial court in the first instance, it would be usurping the role of the trial court and exceeding its authority on appeal.
 {¶ 22} The case must be remanded to the trial court for a determination of whether the proposed subordination agreement is "commercially reasonable" and, consequently, whether the trial court will order enforcement of the settlement *Page 10 
agreement. Consequently, the second assignment of error and the cross-assignments of error will not be addressed.
 III. {¶ 23} The first assignment of error is sustained. The second assignment of error and the cross-assignments of error will not be addressed. The judgment of the Summit County Court of Common Pleas is reversed and remanded for a determination of the commercial reasonableness of the subordination agreement proposed by BCI and its bank lenders.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 11 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellees/Cross-Appellants.
SLABY, P. J. DICKINSON, J. CONCUR
[1] In fact, there were two proposed subordination agreements, one from each of BCI's bank lenders, National City and Key Bank, but the agreements were identical except for the banks with which each would be executed. For ease of discussion, this Court will discuss the two agreements jointly and refer to them with the singular term "agreement."
[2] The trial court indicated that it would hold the issue of interest in abeyance. Allen's motion to enforce the settlement, which the trial court did not entertain, asked the trial court to enforce the settlement with a subordination agreement that had not been approved by BCI's bank lenders. *Page 1