[Cite as *MJK Recycling, LLC v. Republic Servs.*, 2026-Ohio-624.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MJK RECYCLING, LLC, | Case No. CT2025-0079 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CH2023-0206 |
| REPUBLIC SERVICES, INC., ET AL., | Judgment: Affirmed |
| Defendants - Appellees | Date of Judgment Entry: February 23, 2026 |

**BEFORE:** David M. Gormley; Craig R. Baldwin; Robert G. Montgomery, Judges

**APPEARANCES:** JOSHUA J. BROWN, for Plaintiff-Appellant; RODNEY A. HOLADAY, for Defendants-Appellees.

*Montgomery, J.*

{¶1}   Plaintiff-Appellant appeals from the judgment of the Muskingum County Court of Common Pleas granting Defendants-Appellees' Motion to Enforce a Settlement Agreement.  For the reasons below, we AFFIRM.

## STATEMENT OF CASE AND FACTS

{¶2}   This appeal involves a Motion to Enforce a Settlement Agreement between Defendants-Appellees, Republic Services, Inc., Republic Services of Ohio Hauling, LLC, and Browning Ferris Industries of Ohio, Inc. (collectively "BFIO") and Plaintiff-Appellant MJK Recycling, LLC ("Appellant").  The dispute centers around a closed landfill located

on jointly owned property in Muskingum County, BFIO owns two-thirds of the subject property and Appellant owns one-third.

{¶3} Ohio law requires owners of property on which a closed landfill is located to perform certain post-closure care obligations. The post-closure care must be performed for a minimum of thirty years. If the owner(s) fail to perform the post-closure care, the Ohio Environmental Protection Agency can subject the owners to enforcement liability. Around June of 1993, BFIO began the post-closure care activities for the landfill at issue ("Landfill") and continues to perform the required care on both the BFIO and Appellant properties. BFIO incurs significant costs, approximately $100,000.00 per year, to perform the post-closure care. The Landfill has a single common access road (the "Access Road"), located on Appellant's portion of the property. The Landfill is located at the back of the property and is only accessible from the Access Road. Since the Landfill's closure, BFIO has used the Access Road for ingress and egress to perform its post-closure obligations. A prior owner of Appellant's property granted an easement to BFIO to use the Access Road, and BFIO paid that owner $500.00 per month. The easement was renewed with the prior owner in 2011.

{¶4} In 2013, Appellant acquired its one-third portion of the property. Appellant continued to accept the $500.00 monthly payments from BFIO to use the Access Road until sometime in 2022. Appellant states that as costs increased for maintenance and value of the Access Road, and the previous contract expired, Appellant requested $2,000.00 per month for continued use of the Access Road. BFIO refused to pay that amount, and Appellant initiated the underlying instant lawsuit seeking damages related to past and future use of the Access Road, trespass, and/or injunctive relief. BFIO filed

a counterclaim seeking to recover costs from Appellant associated with the post-closure activities performed by BFIO.

{¶5} In 2024, Appellant and BFIO (the "Parties") began settlement negotiations. On March 15, 2024, BFIO sent its first settlement offer to Appellant. On March 25, 2024, Appellant responded and presented BFIO with a "counteroffer" via correspondence. Said counteroffer proposed the now disputed payment term, obligating BFIO to pay $2,000.00 per month to Appellant for "any month in which the Access Road is used for ingress/egress to the landfill by BFIO."[1] On April 9, 2024, BFIO counsel sent a letter to Appellant's counsel stating: "the substantial majority of your client's changed terms are acceptable," including the payment term to use the Access Road.[2] In essence, Appellant would grant an easement to BFIO for use of the Access Road (the "Access Road Easement"), and BFIO would pay Appellant a monthly amount for any month BFIO in fact used the Access Road. *See* Ex. B to *Affidavit of Rodney Holaday*, Esq. ("Holaday Aff.").

{¶6} The Parties continued negotiations and several weeks later, on May 8, 2024, BFIO counsel wrote an email to Appellant's counsel that stated "[c]onfirming

___

[1] On March 25, 2024, Appellant's counsel sent a letter to BFIO counsel articulating a "counteroffer regarding your offer made March 15, 2024." Included therein are the following provisions: "Payment to MJK of $2,000.00 per month from January 2022 to present ($54,000.00 through March 2024). * * * BFIO will agree to pay $2,000.00 per month to MJK for any month in which the Access Road is used for ingress/egress to the landfill by BFIO * * *." *See* (*Plaintiff's Response to Motion to Enforce*, attached as Ex. 2.).

[2] By letter dated April 9, 2024, BFIO counsel wrote "[w]e write in response to MJK's counteroffer dated March 25, 2024. It was good to see the substantial overlap in positions and agreement of the parties. The substantial majority of your client's changed terms are acceptable." The letter goes on to state specific terms to which BFIO did not agree.

On page 2, the letter provides a revised settlement offer outline to which BFIO agrees and lists items numerically. Number (3) states in part, "Beginning January 1, 2025, BFIO will pay $2,000.00 to use the Access Road per calendar month triggered by any single use of the Access Road by BFIO in that calendar month. Payment terms to be set forth in Access Road Easement."

settlement based on our calls. We updated the last settlement points circulated in redline format to reflect" the changes. *See* "*Settlement Action Items*" Email, Ex. C to *Holaday Aff.* As noted in the email, BFIO counsel revised the previously circulated settlement terms to conform to the Parties' current agreement and provided the new terms in red, which "reflect[ed] the heightened 'limited use' of the Access Road, the increasing payments over time, [Appellant's] request to make the first drafting effort at the easement for the Access Road, and the related content that no longer applies based on the changes." *Id.* BFIO counsel attached to the email an outline of the agreed upon material settlement deal points, including the payment term BFIO accepted on April 9, 2024. *See* Ex. D to *Holaday Aff*.

{¶7} Because the settlement required the Parties to draft supporting documents, including the Access Road Easement, the Parties agreed to jointly notify the Muskingum County Court of Common Pleas that a settlement was reached, but additional time was necessary to draft related documents. On May 20, 2024, BFIO sent an email with a proposed settlement agreement, and stated the remaining issues for documentation on the real estate side are in the hands of BFIO's in-house team. On May 22, 2024, a "Joint Notice of Settlement" was signed by both counsel and filed with the trial court. The Joint Notice stated that the "Parties have reached a settlement of this matter" and requested an additional sixty days "to draft and execute settlement documentation," which included real estate records that required more time than a settlement agreement alone. It further stated that "[u]pon the execution of the settlement documentation, the Parties will file a joint stipulation of dismissal with prejudice under Ohio Rule of Civil Procedure

41(A)(1)(b)."  From May to July 2024, the Parties continued to draft relevant settlement documents and send emails back and forth.

{¶8}  On July 11, 2024, Appellant's counsel sent certain documents to BFIO counsel, and therein proposed a revision to the Access Road easement, and redlined the previous payment term to include a new term requiring guaranteed monthly payments, irrespective of actual use of the Access Road. *See Plaintiff's Resp. to Motion*, Ex. 8.  BFIO counsel notified Appellant's counsel that this position breached the essential settlement term previously documented.  On August 30, 2024, Appellant's counsel informed BFIO counsel that Appellant continued to insist on a *guaranteed monthly payment* rather than the "per use" payment structure.  On September 5, 2024, Appellant's counsel again stated that Appellant was "not willing to budge on the monthly payments" and would "require monthly payments with no regard for actual usage that month."  Appellant ultimately refused to sign the settlement agreement.  As a result, on November 27, 2024, BFIO filed a motion to enforce the settlement agreement.

{¶9}  In its Decision granting BFIO's motion, the trial court noted that "the only dispute is a payment term" for BFIO's use of the Access Road.  Based on the documents submitted in support of the motion as well as documents submitted by Appellant in response, the trial court determined that the Parties entered into an enforceable settlement agreement.  The court found as follows: (a) the Parties entered into a binding settlement agreement as detailed in the Parties' May 8, 2024, email correspondence and memorialized by the final settlement agreement, Access Road Easement, and Landfill Easement sent by BFIO counsel to Appellant's counsel on October 15, 2024; and (b)

Appellant failed to comply with the terms of the Agreement by refusing to sign the settlement documentation incorporating the agreed-upon terms.

{¶10} The trial court ordered Appellant to execute and deliver a signed copy of all settlement documents to BFIO within 21 days and held that the "terms and conditions of the Settlement Documentation are valid and fully enforceable and are hereby expressly incorporated into this Order as the order and judgment of this Court." The trial court further ordered the Parties to file a joint stipulation of dismissal with prejudice. On August 22, 2025, Appellant timely appealed the trial court's order.

## SOLE ASSIGNMENT OF ERROR

{¶11} "I. THE TRIAL COURT ERRED BECAUSE IT ORDERED APPELLANT-PLAINTIFFS TO SIGN A NON-EXISTENT SETTLEMENT AGREEMENT."

## STANDARD OF REVIEW

{¶12} The standard of review applicable to a trial court's ruling on a motion to enforce a settlement agreement depends on the issue presented on appeal and often presents a mixed question of law and fact. *Rice v. Am. Select Ins. Co*., 2025-Ohio-2597, ¶ 12 (5th Dist.); *In re Estate of Shoemaker*, 2017-Ohio-8699, ¶ 8 (4th Dist.); *Kinnett v. Corporate Document Solutions, Inc.*, 2019-Ohio-2025, ¶ 19 (1st Dist.). A de novo standard of review is applied to questions of law, such as whether the parties have entered into an enforceable agreement. *Id.* If the question is factual, such as the terms of settlement, a reviewing court will not overturn the trial court's finding if sufficient evidence exists in the record to support the finding. *Id.; Shoemaker* (when the dispute is an evidentiary one, we will not reverse the trial court's determination that a settlement exists as long as there is sufficient evidence as to the terms of the settlement); *Rice*, ¶ 12

(appellate court's standard of reviewing a trial court's determination of factual issues is to determine if the court's findings are supported by competent and credible evidence).

{¶13} Settlements are highly favored by the law as an efficient means to resolve litigation. *Kinnett,* ¶ 19. Generally, a voluntary settlement agreement or stipulation, cannot be repudiated by either party and will be summarily enforced by the court. *Ross Equip. Corp. v. Riggs*, 1999 Ohio App. Lexis 447, *6 (11th Dist.) (enforcing a settlement agreement because in a joint stipulation submitted to the court, the appellant agreed it could not prove damages and stated the case should be dismissed), citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39 (1972). An appellate court should not set aside the judgment of the trial court where the record contains some competent, credible evidence to support the fact that settlement was reached. *Id.* Here, the dispute is a mixed question of fact and law. We must determine whether the facts demonstrate that settlement was reached, such that an enforceable agreement exists.

## ANALYSIS

{¶14} In its sole assignment of error, Appellant claims the trial court erred in granting the motion to enforce a settlement agreement because no actual agreement existed between the Parties.[3] Appellant disputes that it assented to the terms of any such agreement through receipt of the May 8, 2024, email and argues the attachment to the May 8 email is a mere "red-line draft." Appellant places emphasis on the fact that the Access Road Easement (containing the disputed payment term) continued to be drafted after May 8, 2024. Appellant further argues that the altered payment term proposed by

---

[3] In its Brief, Appellant states the standard of review is de novo because "the only question is whether the Appellant-Plaintiff MJK is still bound to a settlement term, even after multiple counteroffers are subsequently exchanged and negotiations are clearly ongoing." *Appellant's Brief*, at p. 8.

Appellant in July 2024 was a "counteroffer," thereby negating any previous offer. We disagree.

### *Settlement Agreements Generally*

{¶15} A settlement agreement is a particularized form of a contract. *Noroski v. Fallet,* 2 Ohio St.3d 77, 79 (1982). It is a "contract designed to terminate a claim by preventing or ending litigation," and said contracts are valid and enforceable by either party. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St. 3d 501, 502 (1995); *Allen v. Bennett*, 2007-Ohio-5411, ¶ 11 (9th Dist.); *Kinnett*, at ¶ 18. A contract is defined as a promise, or a set of promises, actionable upon breach and includes an offer, acceptance, consideration, and a manifestation of mutual assent. *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D. Ohio 1976); *Swan v. Villas Condo Unit Owners' Ass'n.*, 2024-Ohio-2313, ¶¶ 16-17 (1st Dist.); *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 16 (8th Dist.).

{¶16} A "meeting of the minds" regarding essential terms is necessary for a contract to be enforceable. *Kostelnik*, at ¶¶ 4, 16 ("To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear"); *Kinnett,* at ¶ 28. Generally, the "essential terms of a settlement agreement are the price of the settlement to be paid by the defendant and plaintiff's release of the defendant from liability." *Id.*, at ¶ 29. An agreement need not be "formalized" or reduced to writing to be enforceable. Indeed, the terms of a contract may be determined from "words, deeds, acts, and silence of the parties." *Kostelnik*, at ¶ 15.

**{¶17}** For example, in *Spercel*, the Ohio Supreme Court noted that although "[t]here was no formal offer and no formal acceptance," and no written settlement agreement, "the record warranted a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation." *Spercel*, at 39. Concluding that a binding settlement agreement existed, the court noted the "law requires no more formality and not greater particularity than appears here for the formation of a binding contract." *Id*. The Court further stated:

> Once the settlement agreement was achieved through the efforts of the trial judge, plaintiff had a duty, if he wished to disavow that agreement, to file a motion to set it aside. To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force.
>
> *Id.,* at 40.

**{¶18}** "[W]here all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force," unless the parties agreed it was not binding unless reduced to writing and formally executed. *Swan*, ¶ 22, citing *Turoczy Bonding*, 2018-Ohio-3173, ¶ 22, quoting *Charvat v. Oasis Mtge., Inc.*, 2003-Ohio-2879, ¶ 13 (10th Dist.); *PNC Mtge. v. Guenther*, 2013-Ohio-3044, ¶ 15 (2d Dist.).

**{¶19}** Ohio courts have routinely enforced settlement agreements that have not yet been reduced to writing but do include the essential terms of the parties' agreement. *See, e.g., R&L Carriers, Inc. v. Emergency Response & Training Sols., Inc. ,* 2019-Ohio-

3539 (12th Dist.); *Spero v. Project Lighting, LLC,* 2013-Ohio-1294, ¶ 30 (11th Dist.) (recognizing that "parties may enter into a contract even if their agreement contemplates further action toward formalization"); *Hopes v. Barry*, 2011-Ohio-6688, ¶ 42 (11th Dist.) (noting that a term sheet can be enforceable despite anticipated future action to finalize settlement where the "agreement did not anticipate * * * the supplementation of the agreement with additional *material* terms"); *Apple v. Hyundai Motor Am.,* 2010-Ohio-949 (2d Dist.) (finding oral settlement agreement where buyers' counsel orally proposed to settle the lawsuit in return for a payment from manufacturer and manufacturer's counsel orally accepted the offer and confirmed acceptance by a letter sent to buyers' counsel; party could not "repudiate their performance promised in the oral agreement" because they later disagreed with its terms).

### Settlement Agreement Exists as to Essential Terms

**{¶20}** As set forth above, the instant dispute centers around the essential payment term for BFIO's use of the Access Road and the corresponding Access Road Easement. The evidence demonstrates that the Parties expressed mutual assent to such essential payment term. BFIO had used the Access Road since it began the Landfill's closure obligations in approximately 1993 and even used it after Appellant acquired the property in 2013 up through 2022, when Appellant determined to charge more from BFIO.

**{¶21}** On March 25, 2024, Appellant presented BFIO with a settlement "counteroffer" and proposed a monthly charge of $2,000.00 if BFIO used the Access Road during said month. The offer expressly stated that BFIO would be obligated to pay the monthly fee for "any month in which the Access Road is used for ingress/egress to the landfill by BFIO." On April 9, 2024, BFIO accepted the payment term via correspondence

and specifically outlined said term on page 2, stating in relevant part, "[b]eginning January 1, 2025, BFIO will pay $2,000.00 to use the Access Road per calendar month triggered by any single use of the Access Road by BFIO in that calendar month." The documents relevant to Appellant's counteroffer and BFIO's acceptance of the counteroffer are clear and indicate that the payment term was agreed upon to both Parties' satisfaction.

{¶22} The Parties continued with their negotiations regarding additional terms. On May 8, 2024, BFIO counsel emailed Appellant's counsel "confirming overall settlement" based upon phone calls between counsel. The first line of the email references the phone calls and indicates that an agreement was reached. As noted in the email, BFIO counsel revised the previously circulated settlement terms to conform to the agreement between counsel, which "reflect[ed] the heightened 'limited use' of the Access Road, the increasing payments over time, your request to make the first drafting effort at the easement for the Access Road, and the related content that no longer applies based on the changes." *Id.* In other words, contrary to Appellant's position, the redlined changes in the attachment to the May 8, 2024, email established the agreed upon essential terms so that the Parties could begin drafting the actual settlement agreement and any other necessary documents.

{¶23} Appellant makes much of the fact that the said documents were still being drafted well past May 8, 2024, and Appellant references emails between counsel confirming these drafts. However, this argument ignores the critical fact that the main dispute was the payment term for BFIO's continued use of the Access Road. It likewise ignores the fact that Appellant itself was the one who counter-offered with the monthly

payment term based upon actual use, to which BFIO accepted. The fact that additional documents were being revised does not change the fact that the Parties agreed to the actual use payment term. Appellant argues that it could unilaterally change an essential term for which much of this litigation has been focused upon. We disagree. Simply put, the record warrants a finding that the negotiations reached a point where mutual assent was expressed regarding the essential payment term.

{¶24} Importantly, the Parties took it one step further and agreed to jointly notify the Muskingum County Court of Common Pleas that "the Parties have reached a settlement in the matter." On May 22, 2024, the Joint Notice of Settlement was signed by both counsel and filed with the trial court. Appellant's actions, through counsel, indicated assent to the <u>material</u> terms. In the final analysis, if there was no "meeting of the minds" as Appellant vehemently suggests on appeal, Appellant would not have signed and approved the Joint Notice of Settlement that was filed with the court on May 22, 2024, and it would not have agreed to divide the drafting duties for the remaining settlement documents. Because the competent, credible evidence exists to support the trial court's finding that Parties agreed upon the essential payment term for BFIO's use of the Access Road, we conclude that an enforceable settlement agreement exists. Accordingly, the trial court properly enforced the agreement and Appellant's sole assignment of error is overruled.

## CONCLUSION

{¶25} Because sufficient evidence exists to support the trial court's findings that the Parties expressed mutual assent to the essential terms of settlement, we conclude that an enforceable settlement agreement exists. The trial court properly granted BFIO's Motion to Enforce the Settlement Agreement and Appellant's sole assignment of error is overruled.

{¶26} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Court of Common Pleas is Affirmed.

{¶27} Costs to Appellant.


By: Montgomery, J.

Gormley, P.J. and

Baldwin, J. concur.