[Cite as *State v. Miles*, 2012-Ohio-2607.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26187 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEMETRIUS D. MILES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 04 1055 |

DECISION AND JOURNAL ENTRY

Dated: June 13, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Demetrius Miles, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I

{¶2} After Miles and his girlfriend, Georgetta Gomez, left a strip club together, they returned home and fought with one another. The result of the fight was that Miles bit Gomez' lip, severing it and necessitating a later surgery. A grand jury indicted Miles on the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1); (2) two counts of domestic violence, in violation of R.C. 2919.25(A) and 2919.25(C); and (3) violating a protection order, in violation of R.C. 2919.27. A jury trial began on July 18, 2011, and concluded three days later. The jury could not reach a verdict on the felonious assault count, but found Miles guilty on the remaining counts. The jury further found that Miles previously had been convicted of two or more counts of domestic violence, a fact to which Miles had stipulated.

{¶3} On July 26, 2011, Miles filed a motion for a mistrial, arguing that one of the jurors had admitted to improperly researching the definition of "knowingly" the night before the jury reached its verdicts. Miles asked the court to declare a mistrial, or alternatively, to voir dire the jury to inquire about any improper conduct. The court denied the motion, citing the evidence aliunde rule.

{¶4} Subsequently, the court empaneled another jury to retry the felonious assault charge. The second jury found Miles not guilty of felonious assault. For the crimes of domestic violence and violating a protection order, the trial court sentenced Miles to three years in prison.

{¶5} Miles now appeals from his convictions and raises four assignments of error for our review. For ease of analysis, we consolidate and rearrange several of the assignments of error.

II

<u>Assignment of Error Number One</u>

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING THAT DEFENDANT IS GUILTY OF DOMESTIC VIOLENCE MENACING AND DOMESTIC VIOLENCE.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT'S CRIMINAL RULE 29 MOTION WITH RESPECT TO THE DOMESTIC VIOLENCE MENACING CHARGE AND THE DOMESTIC VIOLENCE CHARGE.

{¶6} In his first and third assignments of error, Miles argues that the trial court erred by denying his Crim.R. 29 motions because his domestic violence convictions are based on insufficient evidence. We agree in part.

{¶7} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010-

Ohio-634, ¶ 33. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶8} The jury convicted Miles of two forms of domestic violence; one pertaining to actual harm he caused, and the other to a threat of imminent physical harm he made. Under R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Under R.C. 2919.25(C), "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} Officer Justin Ingham testified that he and his partner, Officer Brent Heller, responded to an assault dispatch at Akron General Medical Center and took statements from Gomez and Miles. Gomez first told the officers that she was attacked by a pimp at a strip club. Miles, who the officers had placed in another room, told Officer Ingham that he had left the strip club without Gomez and came to the hospital with her after he discovered she had been attacked.

Officer Heller testified that he did not believe Gomez' statement, so after approximately thirty minutes had passed and Officer Ingham took Miles from the room, Officer Heller encouraged Gomez to be honest and tell him the truth. At that point, Gomez told Officer Heller that she and Miles had a fight, she threw something at him, and he then grabbed her and bit her lip. Officer Ingham testified that, although Miles was cooperative when he first spoke to him, Miles refused to make any further statements once he learned that Gomez had told the police he bit her.

{¶10} Officer Daniel Metzger also aided in the investigation by reporting to Gomez and Miles' residence to explore the potential crime scene. Gomez gave the police permission to enter the residence when she spoke with Officer Heller at the hospital. Officer Metzger testified that he found a large amount of blood on the floor and walls of the bedroom. Dr. Lawrence Cervino, a staff surgeon at the Crystal Clinic who specializes in plastic surgery, testified that he repaired Gomez' lip after the attack. The bite Gomez sustained completely severed her lip. To repair the injury, Dr. Cervino had to separately suture four layers of Gomez' lip: the lining, two layers of muscle, and the underlying layer. Dr. Cervino opined that the injury was consistent with a bite wound and not a tearing injury because the lip was severed evenly. Due to the fact that a piece of Gomez' lip was actually missing, Dr. Cervino had to stretch the existing tissue in the area across the wound to repair the damage.

{¶11} Although the State subpoenaed Gomez, she did not appear at trial to testify. Instead, the State played numerous excerpts from jail calls between Gomez and Miles. In the calls, the two repeatedly express their love for one another and Gomez states that she will not bring charges against Miles. Gomez also states that she knew Miles did not actually mean to bite her lip.

{¶12} Miles argues that his domestic violence convictions are based on insufficient evidence because there was no evidence that he: (1) acted knowingly to cause Gomez harm, (2) was the aggressor in the situation, or (3) threatened Gomez such that she believed she was in danger of imminent physical harm. We do not address the second argument here because it is a variation of Miles' manifest weight argument, which is that he acted in self-defense. We address the aggressor argument in the next assignment of error where Miles argues that the jury lost its way by not believing his affirmative defense. *See State v. Gatt*, 9th Dist. No. 10CA0108-M, 2011-Ohio-5221, ¶ 9-13.

{¶13} Viewing the evidence in a light most favorable to the State, the record supports the conclusion that the State presented sufficient evidence that Miles knowingly caused physical harm to Gomez. *See* R.C. 2919.25(A). Gomez told the police at the hospital that Miles bit her, and the police found large amounts of blood on the floor and walls of the couple's bedroom. Further, the bite wound Miles inflicted was strong enough to actually severe Gomez' lip and damage four separate layers of her face. A rational trier of fact could have found that Miles knowingly inflicted physical harm upon Gomez based on the evidence presented. His domestic violence conviction under R.C. 2919.25(A) is not based on insufficient evidence.

{¶14} The same cannot be said, however, with regard to Miles' other domestic violence conviction. R.C. 2919.25(C) requires proof of a threat of force that caused the victim to believe the offender would cause him or her imminent physical harm. "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. McKinney*, 9th Dist. No. 24430, 2009-Ohio-2225, ¶ 8, quoting *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39. The State produced no evidence that Miles

ever threatened Gomez with force. The evidence only showed that Miles actually used force against Gomez. The State theorizes that Miles threatened Gomez through his conduct when he grabbed her face immediately before biting her lip. We do not agree with the State's theory.

{¶15} Although a threat may be carried out through conduct, the State's theory would transform virtually every violation of R.C. 2919.25(A) into a violation of R.C. 2919.25(C) as well. R.C. 2919.25(C) requires a threat distinct from any actual harm that may or may not then ensue and form the basis for a separate charge under R.C. 2919.25(A). *See, e.g., State v. Brandon*, 9th Dist. No. 25299, 2011-Ohio-1349, ¶ 16 (offender threatened victim by grabbing her collar, pulling her close, and making several profanity-laced comments to her although victim did not suffer any actual injuries); *State v. Simcox*, 9th Dist. No. 06CA0031, 2007-Ohio-1217, ¶ 8-9 (offender yelled obscenities at victim, banged on bedroom door, told victim he would destroy property if she did not open the door, and referenced a gun); *State v. Perry*, 9th Dist. No. 19110, 1999 WL 692447, *3 (Sept. 8, 1999) (offender brandished knife at victim during argument). In her statement to the police at the hospital and her phone calls with Miles, Gomez did not even remotely suggest that Miles had threatened her. There is nothing in the record to show that Miles made a statement or engaged in conduct that caused Gomez to believe she was in imminent physical danger. There was only evidence that Gomez and Miles fought and, at some point during the fight, he grabbed her face and bit her lip.

{¶16} Without a doubt, Gomez' refusal to appear for trial placed the State in a difficult position. Even so, it was the State's burden to set forth "some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm." *State v. Frazier*, 9th Dist. No. 25654, 2012-Ohio-790, ¶ 48, quoting *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997). The State failed

to satisfy that burden. *See generally State v. Fisher*, 2d Dist. No. 2011-CA-3, 2011-Ohio-5965, ¶ 18-27 (insufficient evidence where victim testified that she did not know if offender was going to try to hurt her); *Bargar v. Kirby*, 12th Dist. No. CA2010-12-334, 2011-Ohio-4904, ¶ 19-22 (generalized, conditional threat insufficient to prove victim had a fear of imminent serious physical harm). Therefore, we must conclude that there is not sufficient evidence in the record to support Miles' conviction under R.C. 2919.25(C). Moreover, because the State failed to produce any evidence to support that charge, we must conclude that the trial court erred by denying Miles' Crim.R. 29 motion for acquittal on that charge.

{¶17} Miles' conviction under R.C. 2919.25(A) is based on sufficient evidence. His first and third assignments of error are overruled to the extent they challenge that conviction. Miles' conviction under R.C. 2919.25(C), however, is not based on sufficient evidence. His R.C. 2919.25(C) conviction is vacated pursuant to that determination, and his first and third assignments of error are sustained to the extent they challenge that conviction.

<u>Assignment of Error Number Two</u>

THE VERDICT OF GUILTY OF DOMESTIC VIOLENCE MENACING AND DOMESTIC VIOLENCE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (Sic.)

{¶18} In his second assignment of error, Miles argues that his domestic violence convictions are against the manifest weight of the evidence. Due to our resolution of Miles' first assignment of error, we only address the conviction arising from a violation of R.C. 2919.25(A).

{¶19} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten*, 33 Ohio App.3d at 340.

**{¶20}** "A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence." *State v. Gates*, 9th Dist. No. 24941, 2010-Ohio-2994, ¶ 7.

> To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm.

*State v. Tanner*, 9th Dist. No. 3258-M, 2002-Ohio-2662, ¶ 21. "[I]n general, 'one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend.'" *Gates* at ¶ 7, quoting *Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist.1986).

**{¶21}** Miles argues that his domestic violence conviction is against the manifest weight of the evidence because he did not knowingly harm Gomez. According to Miles, Gomez was the aggressor, attacked him, and was injured when he acted in self-defense.

**{¶22}** Miles testified that Gomez became angry with him after they left the strip club they were visiting. Gomez' anger escalated when they arrived home, and she eventually threw an ashtray at Miles, which he ducked. Gomez later began trying to strike and bite Miles. According to Miles, he took hold of Gomez' lip in her mouth to show her biting hurts and "it's kind of like you do unto others as you want them to do to you." Gomez then pulled her face away and caused her lip to tear. Miles admitted that he and Gomez initially said that a pimp was responsible for the injury Gomez sustained, but explained that Gomez fabricated that story because she did not want anyone to get arrested.

**{¶23}** When Gomez told the police that Miles bit her, she did not describe the incident the way Miles later did. Gomez did say that she threw something at Miles, but not that she tried to strike or bite Miles or that she sustained the damage to her lip because she pulled away from him. Rather, Gomez told the police that she and Miles fought and then Miles grabbed her face and bit her lip. Dr. Cervino also testified that the injury Gomez sustained was consistent with a bite, not a tear. The injury itself was extremely severe. Additionally, while Gomez did not appear for trial, Officer Ingham testified that, in his experience, it is not uncommon for the victims of abuse to want to shield their abuser from the blame.

**{¶24}** Based on our review of the record, we cannot conclude that the jury lost its way in convicting Miles. Even if Miles testified that Gomez was the aggressor and bit him first, "[a] jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Rice*, 9th Dist. No. 26116, 2012-Ohio-2174, ¶ 35. This is not the "exceptional case in which the evidence weighs heavily against the conviction." *Martin*, 20 Ohio App.3d at 175. Miles' second assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE OHIO CONSTITUTION AND THE CONSTITUTION OF THE UNITED STATES AS APPLICABLE THROUGH THE FOURTEENTH AMENDMENT WHEN IT FAILED TO CONDUCT A HEARING WITH RESPECT TO ALLEGATIONS OF JUROR MISCONDUCT.

{¶25} In his fourth assignment of error, Miles argues that the trial court erred by denying his motion for mistrial without first holding a hearing to explore potential juror misconduct. We disagree.

{¶26} A trial court need not hold a hearing in every instance of alleged juror misconduct. *Akron v. McGuire*, 9th Dist. No. 24638, 2009-Ohio-4661, ¶ 7. Evid.R. 606(B) provides, in part, as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

In contrast to certain exceptions that may apply when external influences have allegedly tainted the jury's verdict, Evid.R. 606(B) explicitly prohibits jurors from offering "internal evidence of the jury's deliberations in order to impeach the sentencing recommendations." *State v. Hessler*, 90 Ohio St.3d 108, 124 (2000).

{¶27} The alleged misconduct that occurred here was that, after trial, one of the jurors admitted that he had conducted independent research on the term "knowingly" before the jury reached its final verdict. The only evidence that the juror conducted any independent research came from the juror himself. This is the exact type of evidence that Evid.R. 606(B) proscribes. *State v. Williams*, 149 Ohio App.3d 434, 2002-Ohio-4831, ¶ 52 (6th Dist.). *See also Wicker v. Cleveland*, 150 Ohio St. 434 (1948). In *Williams*, the appellant sought to impeach his jury's

verdict based solely upon an affidavit from one of the jurors. *Williams* at ¶ 52. The juror averred in the affidavit that he had independently researched the elements of the crimes charged. *Id.* Citing Evid.R. 606(B), the Sixth District held that the juror was incompetent to testify regarding the matter. *Id.* The court further noted that "from the time of Lord Mansfield it has been the rule that the verdict of a jury may not be impeached by a member of the jury absent foundational evidence aliunde, 'i.e. by evidence from some other source.'" *Id.* at ¶ 49, quoting *State v. Adams*, 141 Ohio St. 423, 427 (1943).

{¶28} Miles did not point to any evidence aliunde in his motion for a mistrial. *Compare State v. Sheppard*, 84 Ohio St.3d 230, 233-234 (1998) (evidence aliunde rule did not prohibit evidence that juror contacted a psychologist friend for an outside opinion where the psychologist submitted an affidavit attesting to the conversation). The only evidence came directly from one of the jurors, who admitted to having conducted independent research during the deliberations. "[B]efore a juror may testify as to his own verdict, a foundation for that testimony must be acquired by the court, other than by testimony volunteered by the jurors themselves." *State v. Rogers*, 68 Ohio App.3d 4, 8 (9th Dist.1990). Because Miles only supported his motion for a mistrial with inadmissible evidence, the court did not err by denying the motion without a hearing. Miles' fourth assignment of error is overruled.

III

{¶29} Miles' first and third assignments of error are sustained in part, and his domestic violence conviction under R.C. 2919.25(C) is vacated pursuant to that determination. His remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for the entry of judgment consistent with the foregoing opinion.

12

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶30}  I concur in the judgment.  Mr. Miles has not challenged the denial of his motion for mistrial.  Instead, he has limited his challenge to whether the trial court erroneously failed to hold a hearing.  I concur that the trial court did not commit reversible error in failing to hold a hearing.

<u>APPEARANCES:</u>

CHRISTOPHER M. VANDEVERE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.