[Cite as *State v. George*, 2014-Ohio-5781.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27279 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CLAYTON GEORGE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2012-09-2743 |

DECISION AND JOURNAL ENTRY

Dated: December 31, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Clayton George, appeals from the February 18, 2014 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} K.S., and her three minor children, J.S., H.S., and A.S. lived with K.S.'s boyfriend, Mr. George, at a house on Kenmore Boulevard, and, later, at a house in Barberton. K.S. often worked the night shift as a manager at a local pizza parlor and Mr. George babysat the children while she was away from home. After an injury to A.S.'s neck, allegedly caused by Mr. George, the children were removed from K.S.'s custody and placed in the custody of Summit County Children Services. Following their removal, J.S. and H.S. alleged, on separate occasions, that Mr. George had been sexually abusing them from August of 2011, through April of 2012. J.S.'s and H.S.'s allegations led to a full police investigation which included individual

interviews and physical examinations at Akron Children's Hospital. At the time of the investigation, J.S. was eight years old and H.S. was six years old.

{¶3} Mr. George was indicted on two counts of rape of victims less than ten years of age, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree. He pleaded not guilty to both counts and the matter proceeded to jury trial. The jury found Mr. George guilty of both counts, and the trial court sentenced him to life sentences without the possibility of parole, to be served consecutively.

{¶4} Mr. George appealed, raising four assignments of error for our consideration.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION BY PERMITTING THE STATE TO ADMIT EVIDENCE OF OTHER CRIMES COMMITTED BY [MR.] GEORGE IN VIOLATION OF EVID.R. 404(B) AND [R.C.] 2945.59.

{¶5} In his first assignment of error, Mr. George argues that the trial court erred by allowing the State to admit evidence of other crimes to the jury in violation of Evid.R. 404(B) and R.C. 2945.59. Specifically, Mr. George argues that State's Exhibit 5, H.S.'s medical records from Akron Children's Hospital, contained the statement "[Mr. George] is a registered sex offender due to having sex with a 13 year old at the age of 18." The record indicates that Mr. George did not object to the admission of State's Exhibit 5 on this basis and, therefore, he has forfeited all but plain error. *See State v. Meadows,* 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 24.

{¶6} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Further, to correct a plain error, all of the following elements must apply: "First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights[ ]' [to the extent that it] * * * affected the outcome of the trial." *State v. Roper*, 9th Dist. Summit No. 27025, 2014-Ohio-4786, ¶ 6, quoting *State v. Bennett,* 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 64, quoting *State v. Hardges,* 9th Dist. Summit No. 24175, 2008-Ohio-5567, ¶ 9.

{¶7} Typically, Evid.R. 404(B) is invoked when the State attempts to admit "evidence of prior [crimes] completely independent of the crime for which a defendant is being tried[.]" *State v. Workman*, 9th Dist. Summit No. 24437, 2009-Ohio-2995, ¶ 15. Evid.R. 404(B) provides instruction as to the admissibility of this evidence as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Further, R.C. 2945.59 provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶8} In the present matter, this evidentiary issue came to the attention of the trial court *after* the jury rendered its verdict and had been released from duty. Upon learning of the

contents of State's Exhibit 5, Mr. George filed a brief alleging prosecutorial misconduct. In his brief, Mr. George explained that two assistant prosecutors contacted his trial counsel and reported that State's Exhibit 5 contained information regarding his past crimes and that the jury utilized this information in its deliberations and subsequent verdict of guilty. As such, Mr. George argued that the trial court must dismiss the indictment against him because: (1) the jury already rendered its verdict and the trial court is thus precluded from declaring a mistrial, and (2) he cannot properly support a motion for new trial with an affidavit from a juror because this type of testimony is precluded by Evid.R. 606.

{¶9} The State responded by arguing that there was no prosecutorial misconduct because State's Exhibit 5 had been provided to Mr. George's counsel who had "ample opportunity to discover and object to the statement in question." After holding a hearing, the trial court denied Mr. George's motion to dismiss the indictment, set another hearing date, and allowed Mr. George to file additional motions at that time. No additional motions were filed and, after permitting the parties to preserve the record with respect to how the statement in State's Exhibit 5 was published to the jury, the trial court sentenced Mr. George.

{¶10} As stated above, in order to prove plain error, Mr. George must show that an obvious defect in the trial proceedings affected the outcome of the trial. *See Roper*, 2014-Ohio-4786, ¶ 6. In support of his plain error argument, Mr. George relies exclusively upon statements attributed to a juror regarding the perceived effect of State's Exhibit 5 on the jury's deliberation process. Evid.R. 606(B) provides, in relevant part, that:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

Further, "it has [long] been the rule that the verdict of a jury may not be impeached by a member of the jury absent foundational evidence aliunde, 'i.e. by evidence from some other source.'" *State v. Miles*, 9th Dist. Summit No. 26187, 2012-Ohio-2607, ¶ 27, quoting *State v. Williams*, 6th Dist. Lucas No. L-01-1253, 2002-Ohio-4831, ¶ 49, quoting *State v. Adams*, 141 Ohio St. 423, 427 (1943). "The purpose of the *aliunde* rule is to maintain the sanctity of the jury room and the deliberations therein." (Emphasis sic.) *State v. Hessler*, 90 Ohio St.3d 108, 123 (2000), citing *State v. Rudge*, 89 Ohio App.3d 429, 438-439 (1993). "The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties." *Hessler* at 123.

**{¶11}** Mr. George has not developed any argument regarding the prejudicial effect of admitting Exhibit 5 in light of the entire record. *See* App.R. 16(A)(7). Instead, he attempts to demonstrate prejudice by relying solely on evidence prohibited by Evid.R. 606(B). Therefore, based upon Mr. George's limited argument, we cannot conclude that the trial court committed plain error by admitting State's Exhibit 5 into evidence.

**{¶12}** Accordingly, Mr. George's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

[MR. GEORGE] WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE ADMISSION OF EVIDENCE OF [HIS PRIOR CRIMES] IN STATE'S EXHIBIT 5.

**{¶13}** In his second assignment of error, Mr. George argues that his trial counsel was ineffective for failing to object to the admission of State's Exhibit 5 which contained evidence of his prior crimes.

**{¶14}** To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for counsel's

deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). *Accord State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "This Court need not address both prongs of *Strickland* where an appellant fails to prove either prong." *State v. Bowerman*, 9th Dist. Medina No. 13CA00549-M, 2014-Ohio-4264, ¶ 26.

{¶15} Assuming without deciding that Mr. George's attorney was deficient for failing to object to the admission of State's Exhibit 5, as published to the jury, Mr. George has not established prejudice based upon this record. As discussed above, Mr. George has relied solely upon inadmissible Evid.R. 606(B) evidence to prove prejudice. However, because the juror's allegations about what took place during deliberations are inadmissible as a matter of law, that argument cannot prevail, and he has not developed any argument regarding prejudice in light of the entire record. *See* App.R. 16(A)(7). Thus, given the limited appellate argument, we cannot conclude that the outcome of trial would have been different but for trial counsel's failure to object to the admission of State's Exhibit 5.

{¶16} Therefore, because Mr. George has not satisfied the second prong of *Strickland*, we cannot conclude that Mr. George's trial counsel was ineffective.

{¶17} Accordingly, Mr. George's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY SHOWING BIAS TOWARDS [SIC] STATE'S WITNESSES IN VIOLATION OF [MR. GEORGE'S] RIGHT TO A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶18} In his third assignment of error, Mr. George argues that the trial court erred by showing bias toward the State's witnesses, J.S. and H.S., during their testimony at trial.

Specifically, Mr. George argues that the trial court acted prejudicially by (1) referring to J.S. and H.S. as "vulnerable witnesses" in the presence of the jury, (2) leaving the bench during the State's direct examination of J.S. and H.S. to sit next to the child witnesses, and (3) attempting to relay the whispered testimony of J.S. to the jury.

{¶19}  At the time of trial in January of 2014, J.S. was ten years old and H.S. was seven years old.

{¶20}  The record reflects that Mr. George did not object to the trial court's use of the word "vulnerable" in first advising the jury about the presence of a facility dog named Avery that would be used at trial to assist both children during their testimony.  The record also reflects that Mr. George did not object to the trial court's curative instruction to the jury, prior to H.S.'s testimony, wherein the trial court stated:

* * *

> You must not draw any inference either favorably or negatively for either side because of the dog's presence.  You must not permit sympathy for any party to enter into your considerations as you listen to [H.S.'s] testimony, and this is especially so with an outside factor such as the facility dog.
>
> The dog is—you know, it's a companion.  It's a working dog, I guess, or a companion dog in the sense that we have all seen people with disabilities have a dog who assists them.
>
> As these children do not have disabilities, but it is a companion animal and its classification, I guess if you would, is that it's a facility dog; in other words, it facilitates, as I said yesterday, vulnerable witnesses; and it is a resource of the county available to any vulnerable witness who would be called to testify.

* * *

Further, Mr. George did not object when the judge left the bench to sit next to H.S. and J.S. during their direct testimony.  As such, Mr. George has forfeited all but plain error regarding the trial court's statements about "vulnerable witnesses," and the trial court's actions of sitting next to H.S. and J.S. during their testimony.  *See State v. Hill*, 9th Dist. Summit No. 26519, 2013-

Ohio-4022, ¶ 18. Mr. George, however, has failed to argue plain error on appeal. "[T]his Court will not construct a claim of plain error on behalf of an appellant who fails to raise such an argument in [his] brief." *State v. White*, 9th Dist. Summit Nos. 23955, 23959, 2008-Ohio-2432, ¶ 33. Accordingly, we decline to consider whether the above statements and actions of the trial court constitute plain error.

{¶21} Mr. George also argues that the trial court's attempt to relay information to the jury, whispered to her by J.S. during direct examination, shows bias and prejudice toward this witness. Mr. George objected prior to the judge disclosing any information to the jury as to what the witness had whispered to her. The record indicates that during J.S.'s direct examination, the following discussion transpired:

\* \* \*

[THE STATE]: Well, I know you told us before about some physical stuff that happened. I'm talking about anything that was more of a sexual nature, if you understand that?

[J.S.]: Yeah.

[THE STATE]: What kind of things did he do?

[J.S.]: Can I tell you?

[THE COURT]: Yeah. ([J.S.] whispering to the Judge.)

[THE COURT]: Do you want me to say what you told me[?]

[J.S.]: (Witness nodding head up and down.)

[THE COURT]: Then I will do [] that. All right. And [J.S.], look at me. Make sure I say exactly what you said, okay.

\* \* \*

At this time, Mr. George objected, and a discussion was had between the attorneys and trial court. During that discussion, Mr. George's counsel never objected on the basis of bias, nor did

he otherwise argue that Mr. George's constitutional rights were being violated. Instead, he suggested that J.S. could give her testimony into the record outside the hearing of the jury and then have the record read back to the jury. Then, the State once again attempted to elicit J.S.'s testimony, stating:

* * *

[THE STATE]: [J.S.], now, you had the opportunity to tell the judge the answer to my question.

[J.S.]: Yes.

[THE STATE]: And I know you seem like you're hesitant to tell us out loud. Can you tell us why you're hesitant to tell us out loud?

[J.S.]: Because it's disgusting.

[THE STATE]: Is there some way—if I suggest to you that it was important for all of us to hear what you told the judge, do you think you could be able to tell us?

* * *

[THE COURT]: Because, [J.S.], I think that the lawyers reminded me, I don't know that I can tell them. I don't know that I can say it. It might be against the rules for me to say it, but it's certainly not against the rules for you to say it, okay?

* * *

[J.S.]: I know. He licked my private area.

* * *

{¶22} In *State v. Wade*, 53 Ohio St.2d 182, 188 (1978) (judgment vacated on other grounds by *Wade v. Ohio*, 438 U.S. 911 (1978)), the Supreme Court of Ohio explained that:

Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

Here, although the trial court improperly attempted to reduce J.S.'s anxiety by allowing her to whisper to the court certain testimony instead of speaking it aloud, Mr. George has failed to satisfy the first prong of *Wade* by demonstrating any prejudice resulting from the judge's actions. *See id.*

{¶23} The record indicates that, prior to J.S. whispering testimony to the judge, both H.S. and J.S. testified that Mr. George forced them to perform oral sex on him over a period of time, and both children explained specific details about how and where this occurred. H.S. also testified that Mr. George beat her with a belt after she told her mother what had happened, and J.S. testified that Mr. George threatened her with a B.B. gun, made her watch pornographic videos on his cell phone, and had different names for his private parts. J.S. was also able to audibly testify in front of the jury that Mr. George had "licked [her] private area." At trial, the State played the interviews of J.S.'s and H.S.'s Children At Risk Evaluation ("CARE") recorded at Akron Children's Hospital, and submitted the DVDs to the jury as State's Exhibits 3 and 4. During the interviews, both J.S. and H.S. disclosed detailed information about how Mr. George sexually abused them while their mother was working at night. Additionally, the jury had access to the children's medical records, the jailhouse calls from Mr. George to K.S., the children's mother, wherein K.S. told Mr. George that they found pornography on his cell phone, and the pornographic contents of Mr. George's cell phone.

{¶24} Additionally, as stated above, Mr. George objected *prior* to the judge disclosing any information to the jury about what J.S. whispered to her, and J.S. then told the jury on her own accord that Mr. George "licked [her] private area." Because the judge desisted in speaking directly to the jury upon Mr. George's objection, and also explained to J.S. that "it might be against the rules for [the judge] to say it," any potential for error was ameliorated at that time.

{¶25} In consideration of all of the circumstances under which the trial court acted, as well as the pervasive evidence of sexual abuse, we cannot conclude that the trial court's behavior prejudiced Mr. George's right to a fair trial and, or, impaired the effectiveness of his trial counsel.

{¶26} Accordingly, Mr. George's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE STATE'S "FACILITY DOG" TO ACCOMPANY THE "VULNERABLE" CHILD WITNESSES WITHOUT A SHOWING OF NECESSITY.

{¶27} In his fourth assignment of error, Mr. George argues that the trial court abused its discretion in allowing Avery, the facility dog, to accompany J.S. and H.S. into the courtroom without a showing of necessity.

{¶28} Prior to trial, the State filed a motion to permit Avery to accompany the children into the courtroom during their testimony. In its motion, the State asserted that "Avery's presence is solely for the therapeutic purposes of enabling [J.S. and H.S.] to testify with less stress and a greater degree of accuracy." Mr. George did not file a memorandum in opposition to the State's motion, but later filed what was captioned a "motion in limine"[1] to preclude Avery's presence at trial. In his motion, Mr. George challenged Avery's presence in the courtroom pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because "[a]ny contention by the State [] that the presence of [Avery] during trial has a calming or therapeutic effect is not supported by any accepted, tested, and/or reviewed theory in the scientific community."

---

[1] We question whether a motion in limine is procedurally proper to challenge the presence of a facility dog because the dog itself is not evidence. However, the parties have not raised this issue on appeal, and, we therefore limit our discussion to that which is before us.

{¶29} The trial court ruled upon these motions on the morning of trial, before the competency hearings for the child witnesses, stating:

\* \* \*

The State has filed a motion to permit the facility dog to accompany the witness[es], and [Mr. George's counsel] has opposed that.

\* \* \*

So, first of all, the jury is going to get an instruction, and you say that it is previously—essentially unknown is your quote, the use of this dog—a dog like this. And actually I have some materials provided by the prosecutor's office[.] She did not give me anything directly on point, but \* \* \* there are ways to make \* \* \* analogies to other types of things.

So one of the ways, just to put your mind at rest, is that Avery is not \* \* \* permitted in the courthouse during this trial wearing any identification of a Summit County Prosecutor's Office.

[Avery] has a plain harness or vest[.]

\* \* \*

His handler knows that she too—she is in the courtroom, but she sits in the back. She knows that she is not [to] \* \* \* wear her Summit County Prosecutor's Polo shirt or she wears a jacket or sweater over it or something like that, because the point is that I don't want jurors in the elevator or inadvertently seeing Avery and his handler and understanding that he is here on behalf of the prosecutor's office.

The instruction that I have prepared to give [the jury] describes Avery as a \* \* \* resource of Summit County available to assist witnesses in vulnerable situations and that Avery is available for witnesses on both sides of cases, because that is what Prosecutor Walsh told me. \* \* \*

There is also a part of the instruction that supports [Mr. George's] position. \* \* \* [I]t is that [the jury is] not to infer anything about the testimony, the credibility of the testimony of the child witnesses merely because they have been accompanied by the dog.

So \* \* \* I'm overruling your motion in terms of prohibiting [Avery], but there are hopefully enough safeguards in place to guard against the concerns that you raise.

It is an interesting thing \* \* \* you're the first person I have seen to raise it as a *Daubert* issue. I suppose that in the event that [it] goes to the Court of Appeals, they would decide in case we would need much more evidence on the scientific

aspect of it, but at this point I'm going to say that I don't think it falls under *Daubert* because it's not direct evidence.

* * *

At this time, Mr. George's counsel indicated that the State had never provided him with any kind of records regarding the number of times that H.S. and/or J.S. encountered Avery, or to "what is told to these young witnesses relating to Avery[.]" In response, the trial court stated that counsel could cross-examine H.S. and J.S. during their competency hearings regarding their history and involvement with Avery. If that did not satisfy him, the trial court advised that he could then formally request information from the State, and, depending on whether the State turned over the requested information, he could note his objection. Mr. George's counsel responded, "[f]air enough."

{¶30} The record indicates that H.S. came into the courtroom for her competency hearing and was accompanied by Avery. At one point when Avery was not behaving, Mr. George's counsel stated his objection to having the dog present in the courtroom. Then, after the direct examination of H.S., counsel cross-examined H.S. regarding her previous interactions with Avery at the Summit County Prosecutor's Office. He did the same for J.S. The trial court found both H.S. and J.S. competent to testify, and asked counsel if he had anything else to put on the record before bringing up the jury. He responded "[n]o." At trial, Mr. George's counsel did not object to Avery's accompaniment of H.S. or J.S. during their testimony.

{¶31} On appeal, Mr. George raises arguments with regard to Avery's presence in the courtroom that he did not raise below. Specifically, he argues that (1) unlike the facility dogs in *People v. Tohom*, 969 N.Y.S.2d 123 (2013), *People v. Spence*, 212 Cal.App. 4th 478 (2012), and *State v. Dye*, 283 P.3d 1130 (2012), Avery "is recognizable on the record while he was in court," (2) the State failed to show necessity for having Avery at trial, and (3) the trial court should

adopt the standards set forth in *Tohom*, *Spence*, and *Dye* for permitting the use of a facility dog at trial. We note that at the competency hearing, the trial court afforded Mr. George's counsel the opportunity to cross-examine H.S. and J.S. regarding Avery, and then asked him if there was anything additional he wished to state for the record. At this time, Mr. George could have argued that the State failed to show a need for the dog at trial, that the trial court should adopt the standards set forth in *Tohom*, *Spence*, and *Dye,* and/or that Avery's behavior at the competency hearing was indicative of the level of distraction he would present at trial. However, Mr. George did not make any of these arguments to the trial court, nor did he object to Avery's presence during trial, a time at which the court could have corrected the alleged error. *See State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 36, quoting *State v. Williams* 51 Ohio St.2d 112 (1977), paragraph one of the syllabus. ("An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.")

{¶32} "This Court's role on appeal is to review the trial court's decision and determine whether it is supported by the record. Because this Court acts as a reviewing court, it should not consider for the first time on appeal issues that the trial court did not decide." *Allen v. Bennett*, 9th Dist. Summit Nos. 23570, 23573, 23576, 2007-Ohio-5411, ¶ 21, citing *Lang v. Holly Hill Motel, Inc.,* 4th Dist. Jackson No. 05CA6, 2005-Ohio-6766, ¶ 22, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). "If this Court were to reach issues that had not been addressed by the trial court in the first instance, it would be usurping the role of the trial court and exceeding its authority on appeal." *Allen* at ¶ 21. Therefore, because Mr. George failed to raise these arguments below, we decline to address them in the first instance on appeal.

**{¶33}** Accordingly, Mr. George's fourth assignment of error is overruled.

III.

**{¶34}** In overruling all of Mr. George's assignments of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

STEPHANIE YUHAS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.