[Cite as *State v. Tomassetti*, 2015-Ohio-3092.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No.     14AP0026 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY TOMASSETTI | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.     2014 CRB 000577 |

DECISION AND JOURNAL ENTRY

Dated: August 3, 2015

MOORE, Judge.

{¶1} Defendant-Appellant Anthony Tomassetti appeals the judgment of the Wayne County Municipal Court. We affirm.

I.

{¶2} In April 2014, a complaint was filed against Mr. Tomassetti alleging that he committed the crime of domestic violence against his mother ("Mother") in violation of R.C. 2919.25(C). Because Mr. Tomassetti had been previously convicted of a violation of R.C. 2915.25(C), the violation was a misdemeanor of the second degree.

{¶3} The matter proceeded to a bench trial, after which the trial court found Mr. Tomassetti guilty. Mr. Tomassetti was sentenced to thirty days in jail and was ordered to pay $500 in fines and court costs. The judgment entry notes that Mr. Tomassetti's sentence would be stayed pending appeal upon the filing of a cash bond and a notice of appeal. Mr. Tomassetti has appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

MR. TOMASSETTI'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶4} Mr. Tomassetti asserts in his first assignment of error that his conviction is based upon insufficient evidence. Mr. Tomassetti appears to assert that his behavior was typical for him and any threat made was insufficient to cause Mother to be in fear of imminent physical harm. We do not agree.

{¶5} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶6} R.C. 2919.25(C) provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. Miles,* 9th Dist. Summit No. 26187, 2012-Ohio-2607, ¶ 14, quoting *State v. McKinney,* 9th Dist. Summit No. 24430, 2009-Ohio-2225, ¶ 8, quoting *State v. Cress,* 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39. "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "A person acts knowingly,

regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B).

> Imminent has been defined as ready to take place, near at hand, impending, hanging threateningly over one's head, or menacingly near. Imminent does not mean that the offender carry out the threat immediately or be in the process of carrying it out. Rather, the critical inquiry is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm[.]

(Internal quotations and citations omitted.) *McKinney* at ¶ 11. "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "[f]amily or household member" includes a parent "who is residing or has resided with the offender[.]" R.C. 2919.25(F)(1)(a)(ii).

{¶7}   Mr. Tomassetti suffers from mental health issues including anxiety and panic attacks. He frequently hears voices and often yells at them. At the time of the incident at issue, he lived with his grandmother ("Grandmother") who is confined to a wheelchair. Grandmother described him as being "mad all the time." Mr. Tomassetti has hit her "before and [has] shove[d] the refrigerator and [has] holes punched in the walls." Grandmother has called the police about Mr. Tomassetti's behavior on many prior occasions.

{¶8}   On April 18, 2014, Mother went over to Grandmother's house to bring her and Mr. Tomassetti dinner. According to Mother, she visited for about ten minutes when she heard Mr. Tomassetti "screaming and carrying on" in the back of the house. She went and asked him if she could help him. "[H]e didn't like that and pushed [Mother] into the wall and pushed [her] into the door." Grandmother confirmed that Mr. Tomassetti was yelling and cursing and that Mother had gone back into the hallway to ask him if she could help him. Grandmother heard

banging and assumed that Mr. Tomassetti had shoved Mother because "[h]e will shove [Grandmother] in [her] wheelchair."

{¶9} Mr. Tomassetti kept telling Mother to leave him alone and threatened to kill her. While it was not always clear if Mr. Tomassetti was yelling at the voices or at Mother, Grandmother believed he was screaming at Mother because he was calling her names. Grandmother testified that Mr. Tomassetti threatened to kill both of them while he was still in the kitchen, and threatened to kill Mother several times that day. Mother was afraid that Mr. Tomassetti was going to harm her. She testified that she was a little "spooked" because he "has some mental issues and he can be overpowering[.]" The police were called and Mother waited in the garage for them. Grandmother stated that they called the police because she was afraid that Mr. Tomassetti might harm them that day. She testified that she allowed Mr. Tomassetti to continue to live with her even though she "fe[lt] threatened quite often[,]" because she "would rather put up with him there th[a]n what happens to him when he's out on the street."

{¶10} Mother testified that while Mr. Tomassetti frequently screams and yells at voices, and the police have been over many times before, she called the police this time "[b]ecause when he puts his hands on you and starts getting violent * * * you don't know what he is going to do because you don't know what's going on in here * * *." She acknowledged that she called the police in part to get her son help for his mental health issues, but also because she was concerned about her own safety.

{¶11} Officer Brandon Heim of the Wooster Police Department responded to the call at Grandmother's house. When Officer Heim arrived, he found Mother in the garage. He described her as "very concerned for her son[ and] somewhat shaken[.]" He believed that she was fearful. Officers located Mr. Tomassetti in the house. When he saw the officers, he

proceeded to his bedroom. He was yelling and very angry. Because Mr. Tomassetti had a history of attacking police, he was immediately placed in handcuffs. Officer Heim testified that Mr. Tomassetti was "very angry at [Mother]. * * * He was cursing, wanted her to leave."

{¶12} Mr. Tomassetti testified on his own behalf. Mr. Tomassetti indicated that Mother had a history of coming over to Grandmother's house and complaining and ranting at him and Grandmother. He stated that Mother's behavior leads him to have anxiety and panic attacks. During the attacks, his muscles cramp up, he gets dizzy and anxious, and he has trouble moving. If the cramps are bad enough, he might start yelling. Sometimes he swings his arms around to "knock [the cramps] out of [his] muscles[.]" He claimed that, the day of the assault, Mother was saying bad things about him to Grandmother and so he became anxious and went to his room. He began yelling because of his cramps. Mother followed him into the hallway and taunted him, threatened him, and was trying to pick a fight. Mr. Tomassetti testified that he just kept telling Mother to leave him alone and denied threatening her. He admitted that he yelled at her but never mentioned pushing or shoving Mother.

{¶13} After reviewing the record, and viewing the evidence in a light most favorable to the prosecution, we conclude the State presented sufficient evidence that Mr. Tomassetti knowingly caused Mother, via a threat of force, to believe that he would cause her imminent physical harm. *See* R.C. 2919.25(C). There was evidence that Mr. Tomassetti was angry at Mother, that he yelled at her, and threatened to kill her. Additionally, there was evidence that he shoved her into a wall and a door. Moreover, there was testimony that Mother was afraid and concerned for her safety. Both Mother and Grandmother were familiar with Mr. Tomassetti's outbursts, yet, they testified that his actions that day caused them to call the police. Given that Mr. Tomassetti had already used force against Mother, we conclude a trier of fact could

reasonably conclude that Mr. Tomassetti's threat caused Mother to believe that he would harm her. In fact, Mr. Tomassetti was still angry at the point in time that the officers arrived; the officers were concerned enough about Mr. Tomassetti's behavior that they immediately placed him in handcuffs.

{¶14} In light of the evidence, our duty to view that evidence in a light most favorable to the State, and Mr. Tomassetti's limited argument, we conclude there was sufficient evidence to find him guilty of violating R.C. 2919.25(C). Mr. Tomassetti's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> MR. TOMASSETTI'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} Mr. Tomassetti argues in his second assignment of error that his conviction for domestic violence is against the manifest weight of the evidence. We do not agree.

{¶16} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶17} Mr. Tomassetti argues that his conviction for domestic violence is against the manifest weight because (1) the sequence of events is not clear; (2) Mother and Grandmother have a history of dealing with Mr. Tomassetti's behavior and so would not have been in imminent fear; and (3) the weight of the evidence supports the conclusion that Mother and Grandmother called the police to get Mr. Tomassetti help, not because they were afraid.

{¶18} First, Mr. Tomassetti points to the lack of testimony detailing a precise timeline of the events of the assault. It is true that the testimony is not clear about when Mr. Tomassetti threatened Mother – whether it was before or after he shoved her. Nonetheless, both Mother and Grandmother testified that Mr. Tomassetti was yelling at Mother and that he threatened her. Mother testified that he shoved her into a wall and a door. Further, both Mother and Grandmother indicated that they had concerns that Mr. Tomassetti would harm them. Absent further explanation, we fail to see how not knowing the precise sequence of events leads to the conclusion that Mr. Tomassetti's conviction for domestic violence was against the weight of the evidence.

{¶19} Mr. Tomassetti also argues that the weight of the evidence supports the conclusion that Mother and Grandmother were not in imminent fear of physical harm because they knew Mr. Tomassetti and were familiar with his outbursts. Thus, essentially he asserts that their testimony that they were afraid was not credible. We remain mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Bulls,* 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 17. Moreover, the fact that Mr. Tomassetti frequently had angry outbursts does not necessitate the conclusion that the April 18, 2014 incident did not cause Mother to fear for her safety. From hearing the evidence, a trier of fact could reasonably conclude that Mr. Tomassetti had frequent outbursts and that some of those incidents were severe enough that Mother and/or Grandmother felt compelled to call the police. In light of that evidence, and the testimony surrounding the April 18, 2014 assault, a trier of fact could also have found that the April 18, 2014 incident did frighten Mother and Grandmother in light of the fact that they did call the police.

{¶20} Finally, Mr. Tomassetti asserts that the weight of the evidence supports that Mother and Grandmother called the police not because they were afraid, but instead because they wanted to get Mr. Tomassetti help for his mental health issues. Thus, he maintains that the record did not support that Mother believed that Mr. Tomassetti was going to cause her physical harm. There was evidence that both Mother and Grandmother did contact the authorities in part in hope of getting Mr. Tomassetti help. However, there was also evidence that they were afraid that Mr. Tomassetti would cause them harm and that also motivated them to call the police. Further, even if Mother and Grandmother had only called the police to get Mr. Tomassetti help, the trier of fact could still reasonably conclude that the evidence nonetheless supported the conclusion that Mother was afraid that Mr. Tomassetti would cause her imminent physical harm. We cannot say that the trier of fact committed a manifest miscarriage of justice in concluding that Mr. Tomassetti knowingly caused Mother to believe, via a threat of force, that he would cause her imminent physical harm. *See* R.C. 2919.25(C).

{¶21} After thoroughly and independently reviewing the record, we cannot say the trier of fact lost its way in weighing the evidence and making credibility determinations. Based on Mr. Tomassetti's arguments, his conviction for domestic violence is not against the manifest weight of the evidence. Mr. Tomassetti's second assignment of error is overruled.

III.

{¶22} Mr. Tomassetti's assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

BRADLEY R. HARP, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.